## McFee *versus* Harris,

After acknowledgment of a sheriff's deed in open Court, the title of the sheriff's vendee cannot be affected by mere irregularities however gross.

When both parties claim by sheriff's sale, made under several executions against the same party, the oldest sale passes the title when there is no evidence of fraud in the case.

ERROR to the District Court of *Allegheny county*.

The facts of the case are stated in the opinion of the District Court, of which the opinion of this Court is merely an affirmance.

Opinion of the District Court:—

"The evidence in this case raises but one question, viz.:— Whether the sheriff's sale to Miller, of the 19th of June, 1849, conveyed to him the title of John McFee, under whom both parties claim. If it did not, the plaintiff is entitled to recover, otherwise the defendant will be entitled to judgment.

"This is said to be, and perhaps is, a hard case on part of the plaintiff, or his ancestors; but this, if true, can and ought to have no influence on our decision. Hard cases, as it is truly said, make bad precedents, and bad precedents, in their turn, make hard cases; the only safe rule, therefore, is, to abide by and administer the law as we find it, leaving the responsibility resting on those who alone have the power to alter it.

"Both parties claim title under John McFee, who owned the land in dispute. The plaintiff derived his title as follows:—On the 22d of June, 1846, one Arthur A. Anderson obtained a judgment against John McFee, in the Common Pleas of this county, for $35.23, and issued an execution thereon to December Term following, on which the land in dispute was levied upon, inquisition held and extended at $20 per annum, retaining notice served on the defendant, and on the 24th December, 1846, he agrees to retain the property at the valuation fixed by the inquest. On the 31st of October, 1849, the affidavit of plaintiff's

[McFee *v.* Harris.]

attorney was filed, setting forth the default of the defendant to pay according to the provisions of the Act of Assembly, and thereupon a *venditioni exponas* was issued to December Term, 1849, and on the 24th of December, the property was sold by the sheriff to Matthew Long, and on the 26th of January, 1850, the deed for the same was acknowledged. On the 15th of February, 1851, Matthew Long conveyed the land to John J. McFee, the present plaintiff.

" The defendant claims title as follows:—On the 25th of February, 1846, John H. O'Brien obtained a judgment against John McFee, in the Common Pleas, for $20, with costs, and issued an execution thereon to June Term, 1847. The sheriff's return showed a levy on the land in dispute, notice of inquisition served, and, by *consent of parties*, inquisition and property extended, and valued at $40 per annum. On the 16th of October, 1847, a rule was obtained to show cause why the levy and inquisition should not be set aside; which was *discharged by consent* on the 23d of October. On the 24th of June, 1848, a retaining notice was served on the sheriff, and on the 7th of August, 1848, the same was served by him on the defendant. September 4, 1848, the defendant, by his agent, agreed to retain the property at the valuation. On the 23d of May, 1849, J. H. O'Brien filed his affidavit, setting forth the defendant's default to pay the half-yearly instalment according to the provisions of the Act, and the same day a *venditioni exponas* was issued, and the property sold to A. H. Miller, on the 18th of June. September 22, 1849, the sheriff acknowledged his deed for the same. January 31, 1850, A. H. Miller and wife conveyed the property to J. H. O'Brien, who, together with his wife, on the 2d of January, 1851, conveyed to Robert Palmer, and on the 3d of September, 1851, Robert Palmer and wife conveyed to William S. Harris, the present defendant.

" By the records in evidence, it appears that while the property was under extension, and retained by the defendant at the valuation, under a retaining notice, an execution was issued on another judgment; and after notice of inquisition by the sheriff, the defendant *consented* to an inquisition, extension and valuation at $40 per annum; and, after moving the Court to set it aside, the rule was discharged by *consent*, and he agreed to retain the property at the valuation. No objections appear to have been made to the sheriff's sale, or acknowledgment of the deed; nor is it easy to perceive what objections could have been made which could have availed him, after consenting to all the previous proceedings leading to the sale. By consenting to the proceedings, he waived all objections to any real or supposed irregularities that might have intervened, and became as absolutely bound to pay the half-yearly instalments, or suffer the property to go to

[McFee *v.* Harris.]

sale, as if no former inquisition or extension had taken place. This position is clearly established by the 3d section of the Act of 13th October, 1840, which, *inter alia,* provides :—' If the said defendant, or defendants, or other person claiming the said real estate as aforesaid, shall signify his or their willingness to retain the same at the valuation and appraisement, in pursuance of the first section of this Act, he or they shall thereby become liable to pay to the plaintiff the amount of the said annual valuation and appraisement, in half-yearly instalments, until the debt, interest and costs of the said *fieri facias* be fully paid, &c., &c. ; and on failure to make payment for a period of thirty days after any half-yearly instalment shall become due, it shall be lawful for the plaintiff, his agent or attorney, upon making affidavit thereof, and filing the same in the prothonotary's office, to issue a writ of *venditioni exponas* for the sale of the said real estate, as fully, and with like effect, as though a condemnation thereof had taken place.'

" Without the binding efficacy of the statute here given, the sheriff's deed, under which the defendant claims, would be good and valid under the well-considered doctrine laid down by the Supreme Court in the case of Shields *v.* Miltenberger, 2 *Harris* 76.

" Without going into a careful analysis of that case, it is only necessary to quote a single paragraph, viz. :—' The absence of authority or the presence of fraud, utterly frustrates the operation of the sale as a means of transmission of title, and avoids it from the beginning. But mere irregularities, whether of omission or commission, which do not render the officer powerless or taint the transaction with turpitude, may be cured by the tacit acquiescence of those who ought to speak in time :' 2 *Harris* 78.

" The prothonotary is directed to enter judgment for the defendant, on the question reserved, *non obstante veredicto.*"

Plaintiff's counsel excepted.

*Wood* and *Hepburn,* for plaintiff in error.

*F. Williams,* for defendant in error.

The arguments of the counsel on both sides were confined to the irregularities alleged in the proceedings of the sheriff's sales, and which are not specially considered in the opinion of this Court.

The opinion of the Court was delivered by
Lewis, C. J.—The second error is to the rejection of evidence ; but no bill of exceptions is to be found in the paper-book. It is a waste of time to assign errors without verifying them by the record.

[McFee v. Harris.]

Both parties claim under sheriffs' sales by virtue of executions against John McFee. The question is whether the youngest or| the oldest sale passes the title. The Court below decided in favour of the oldest sale. This was correct. The sheriff had authority to sell, and there is no evidence of fraud in the case. After acknowledgment of the sheriff's deed in open Court, the title of the sheriff's vendee cannot be affected by mere irregularities however gross. Nothing but fraud in the sale, or a want of authority to sell, can defeat his title: 2 *Harris* 79.

Judgment affirmed.